FILED
United States Court of Appeals
Tenth Circuit

**January 11, 2008**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN DOE,

    Defendant - Appellant.

No. 05-3213
(D. Kan.)
(D.C. No. 03-CR-10056-MLB)

**ORDER AND JUDGMENT**[*]

Before **KELLY, McKAY** and **O'BRIEN**, Circuit Judges.

Appellant John Doe[1] pled guilty to the unlawful use of a communication device to facilitate a felony drug crime and possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 924(c), respectively. The district court sentenced him to 236 months imprisonment. We reversed and remanded for resentencing. *United States v.*

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We previously granted Doe's unopposed motion to conceal his identity. *See United States v. Doe*, 398 F.3d 1254, 1255 n.1 (10th Cir. 2005). We continue that practice here.

*Doe*, 398 F.3d 1254, 1256 (10th Cir. 2005). On remand, the district court again sentenced Doe to 236 months imprisonment, applying *United States v. Booker*, 543 U.S. 220 (2005). Doe appeals from his sentence claiming it is unreasonable. We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

On November 20, 2002, Doe was indicted in another case (02-CR-10174) charging eight offenses "including felon in possession of a firearm, knowingly carrying a firearm during and in relation to a drug trafficking crime, possession of marijuana, felon in possession of ammunition, possession of both cocaine and crack cocaine, and possession of both cocaine and crack cocaine with intent to distribute." *Doe*, 398 F.3d at 1256. In that case, a superseding indictment added two counts — possession of cocaine base with intent to distribute and possession of counterfeit money — for a total of ten counts. *Id*. On February 20, 2003, the superseding indictment was dismissed without prejudice to allow Doe to work as a confidential informant. Because Doe did not comply with the terms of his agreement with the government, this case (03-CR-10056) was commenced on March 14, 2003, with the filing of a criminal complaint charging possession with intent to distribute crack cocaine and possession of counterfeit money. On April 4 and 18, 2003, an information and superseding information were filed charging Doe with unlawful use of a communication device to facilitate a felony drug

-2-

crime (Count 1) and possession of a firearm in furtherance of a drug trafficking crime (Count 2). On April 21, 2003, Doe pled guilty to both counts.

At the time of Doe's plea, the district court "was <u>not</u> made aware, either by language in the plea agreement itself [] or through the statements of counsel at the time of the [change of] plea [hearing]" that the government had agreed to dismiss the ten count superseding indictment and recommend a nine year sentence in exchange for Doe's assistance. (R. Vol. II, Doc. 50 at 5-6).[2]

---

[2] Indeed, Paragraph 13 of the plea agreement, entitled "No Other Agreements," provided: "The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement *embodies each and every term of the agreement between the parties*." (R. Vol. I, Doc. 18 at 6 (emphasis added).)

The following colloquy occurred at the change of plea hearing:

THE COURT: All right. Paragraph [3 of the plea agreement] - there isn't any relevant conduct here, is there? It talks about dismissed counts. There's no dismissed counts of any indictment that I see in the file.

[ASSISTANT UNITED STATES ATTORNEY]: Your Honor, there was another indictment filed against [John Doe] which was entirely dismissed and then this new case was filed. I don't know how probation might look at it; but we wanted to make clear that the old indictment that was dismissed, we're talking about that as well [in paragraph 3.]

(*Id*. at 7-8; Vol. III at 8.) Paragraph 3 of the plea agreement, entitled "Relevant Conduct," stated: "The defendant agrees that the conduct charged in any dismissed counts of the indictment is to be considered as well as all other uncharged related criminal activity as relevant conduct for purposes of calculating the offense level for Counts 1 and 2, in accordance with the United States Sentencing Guidelines (U.S.S.G.) § 1B1.3." (R. Vol. I, Doc. 18 at 2.)

A.  Initial Sentencing

A presentence investigation report (PSR) was prepared.[3]  The PSR calculated Doe's criminal history points as thirty, resulting in a criminal history category of VI.  It noted the statutory maximum sentence for Count 1 was four years (forty-eight months).  *See* 21 U.S.C. § 843(d)(1).  The PSR also noted Count 2 carried a mandatory minimum consecutive sentence of five years (sixty months) imprisonment.  *See* 18 U.S.C. § 924(c).  It further discussed the impact of the plea agreement, noting if Doe had been charged with possession of cocaine with intent to distribute (one of the charges in the original ten count indictment), his guidelines range would have been determined pursuant to the "career offender" provisions.  *See* USSG §4B1.1.  Applying §4B1.1 and granting him a three-level downward adjustment for acceptance of responsibility, USSG §3E1.1, his offense level would have been 31.  With a criminal history category of VI, his guidelines range would have been 188 to 235 months imprisonment, not including the five year mandatory minimum consecutive sentence for his § 924(c) conviction. However, the recommended sentence remained 108 months.  Doe made no objections to the PSR.

On July 16, 2003, pursuant to Rule 32(h) of the Federal Rules of Criminal Procedure, the district court notified the parties by letter it intended to depart

_____

[3]  Doe was sentenced under the 2002 edition of the United States Sentencing Guidelines.  All citations to the guidelines herein refer to that edition unless otherwise indicated.

-4-

upward from the recommended range of 108 months. The court premised its upward departure on Doe's extensive criminal history as well as "his agreement regarding consideration of relevant conduct in paragraph 3 of the plea agreement." (R. Vol. I, Doc. 24 at 1.) The court conducted an extensive analysis of the appropriateness of the upward departure under *United States v. Bartsma*, 198 F.3d 1191, 1195 (10th Cir. 1999), *overruled in part by United States v. Atencio*, 476 F.3d 1099, 1105 n.6 (10th Cir. 2007). Essentially, it treated Doe as a career offender and fixed the modified sentencing range based on the dismissed counts of possession of crack cocaine with intent to distribute, resulting in a modified range of 188 to 235 months.

Neither party objected to the methodology used by the district court to calculate the upward departure, but both parties requested that the district court not depart upward due to Doe's cooperation with the government. *Doe*, 398 F.3d at 1256. Nevertheless, "[t]he district court ultimately departed upward to a sentence of 188 months on [Count 2] to be served consecutive to the forty-eight-month sentence for Count 1, for a total sentence of 236 months." *Id.* at 1256-57. In doing so, it did not consider Doe's assistance to the government because the government had not filed a USSG §5K1.1 motion for "substantial assistance."

B. First Appeal

Doe appealed from the sentence. In that appeal, the government argued the district court properly considered Doe's assistance and appropriately determined

an upward departure advanced the objectives of 18 U.S.C. § 3553(a)(2). *Id.* at 1257. We reversed, vacated the sentence and remanded for re-sentencing. *Id.* at 1261. Relying on precedent from other circuits and 18 U.S.C. § 3661, which prohibits limitations on the information the district court is allowed to consider when "imposing an appropriate sentence," we held the district court should have considered Doe's cooperation with the government in its sentencing decision, even if it did not rise to the level of "substantial assistance" sufficient to warrant a §5K1.1 motion. *Id.* at 1259-61.

C. Resentencing

On remand, the government and Doe each filed memoranda asking the district court to sentence Doe to 108 months imprisonment. The district court conducted a resentencing hearing at which Special Agent John Durastanti of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified about Doe's assistance as a confidential informant. Specifically, he testified Doe had provided him with information about thirty-four individuals, though none of them were prosecuted as a result of his information. Agent Durastanti also testified he had concerns about Doe's self-control because 1) he had failed to contact Agent Durastanti as instructed when he was released from custody, 2) he had previously fought with officers, 3) he was involved in three crimes for which he could potentially be sentenced in the 30 to 40 year range, 4) he continued to use drugs, and 5) he was a flight risk. At best, according to Durastanti, Doe was able to

corroborate information provided by other sources. Doe conceded his information did not rise to the level of substantial assistance.[4]

On May 19, 2005, the district court issued its memorandum decision on resentencing. In that memorandum, it recounted the history of the case and the parties' failure to inform it at the change of plea hearing of the government's agreement to dismiss the pending charges in exchange for Doe's cooperation. It also highlighted "the agreement to dismiss the [ten count] superseding indictment in favor of much less serious charges due to defendant's assistance was not made known to the probation officer and was not mentioned in the presentence investigation report." (R. Vol. II, Doc. 50 at 8.)

The district court conducted an extensive review of the value of Doe's cooperation, which we had instructed it to do. It held:

> [I]t is readily apparent from SA Durastanti's testimony that the information provided by defendant was largely cumulative of other information known to authorities and, perhaps most important, was not very useful because of defendant's lack of reliability. None of the persons identified by defendant were ever prosecuted using defendant's information.

(*Id*. at 10.) The court considered §5K1.1 in detail and contrasted Doe's assistance with the factors set forth therein. It pointed out: "Defendant's assistance does not diminish the seriousness of the offenses charged in the superseding indictment

_____

[4] Given Doe's admission, his argument on appeal that the district court inadequately credited his "*massive* cooperation with the government," strains credulity. (Appellant's Opening Br. at 12 (emphasis added).)

[case 02-CR-10174] or in the subsequent superseding information [this case]." (*Id.* at 13.) The court noted: "There is no evidence that defendant's assistance, coming as it did while defendant either was in custody or on pretrial release, reflects respect for the law or the orders of this court." (*Id.*) It ultimately characterized Doe's cooperation as "insubstantial assistance." (*Id.* at 18 (quotation omitted).)

The district court considered the factors laid out in § 3553(a)(2) to determine the appropriateness of an upward departure. In doing so, it largely borrowed from its earlier sentencing order. It reasoned:

> Based upon defendant's virtually uninterrupted history of committing crimes soon after coming into contact with the judicial system and/or release from custody, I find that there is a high likelihood that defendant will continue to commit crimes after release from confinement in this case. In addition, the present offense, as well as some of defendant's previous offenses which involve firearms, provide a further justification for a departure designed to protect the public. 18 U.S.C. § 3553(a)(2)(C). Defendant's extensive history of criminal activity, coupled by its repeated nature and its escalation in severity . . . punctuated by repeated periods of incarceration, demonstrate that defendant does not respect the law and that his prior involvement with the criminal justice system has not been sufficient to deter his criminal conduct.

(*Id.* at 12 (quotations omitted).) The court also observed:

> 18 U.S.C. § 3553(a) sets out the factors which must be considered in imposing a sentence. The accepted way for a prosecutor to reward a defendant's cooperation or assistance is through a section 5K.1.1 motion . . . . Defendant may have helped the government but when defendant's conduct and background are considered in light of the statutory factors, it is readily apparent that the 108-month sentence engineered by government counsel's charging decision is not, to use

the statute's term, "sufficient." It is undisputed that defendant is a career offender, whether that term is used in its common meaning or according to [the] guideline definition. He is a serial burglar with a long-term drug addiction who carries firearms. The offenses to which defendant pleaded guilty are serious enough, but they pale in comparison to the charges which were dismissed. The validity of those charges has not been disputed. Defendant's long and almost uninterrupted criminal history demonstrates a complete lack of respect for the law and requires just punishment, not lenient treatment. Defendant's revolving-door encounters with the state criminal justice system show that he has not been deterred by his past experiences and that a longer period of incarceration is necessary to deter defendant from criminal conduct and, perhaps most important, to protect the public from his further crimes. Finally, to the extent defendant is willing to avail himself of the opportunity, a long period of incarceration and correctional treatment may cure defendant of his drug addiction.

(*Id*. at 12-13 (quotations omitted).)

The district court then addressed the appropriate degree of departure. Based on its "unobjected-to methodology" the district court fixed an "advisory guideline range" of 188 to 235 months on Count 2, running consecutive to the statutorily-capped forty-eight month sentence on Count 1. (*Id*. at 16.) In determining this range, it relied upon Doe's "long, serious and basically continuous" criminal history since he was a juvenile. (*Id*.) It described Doe as having "never led a crime-free lifestyle," nor having "ever held a regular job." (*Id*.) The court found it unsurprising that Doe "was able to 'assist' authorities with information regarding criminals and criminal activity. He knows nothing else." (*Id*. at 16-17.)

All in all, the district court found this case "had, and still has, upward

departure written all over it." (*Id.* at 17.) The court expressed puzzlement at "how counsel could have arrived at their agreement to dismiss the superseding indictment, much less to be so naive to believe that once the court was finally made aware of the facts, it would agree that a nine year sentence would be adequate." (*Id.* at 17.) The court concluded:

> There is something else which sets this case apart. Many of the crimes committed by defendant were not "victimless" crimes but crimes of violence. Defendant is the type of person who should be in prison and for whom prisons are made. He has consistently demonstrated his inability to live a productive, law-abiding lifestyle. Criminals are his associates. In retrospect, this court should not have given defendant a low end of the guidelines sentence and even now has been sorely tempted to raise the sentence because no matter how long defendant is incarcerated, he undoubtedly will resume his life of crime upon release, his promises to the contrary notwithstanding.

(*Id.* at 18-19.) The court reimposed the cumulative 236 month sentence of imprisonment. On June 6, 2005, the amended judgment was entered. On May 27, 2005, Doe filed a timely notice of appeal. On appeal, Doe contends the district court erred by departing upward from the guidelines. He also challenges the reasonableness of the ultimate sentence imposed.

## II. DISCUSSION

Since *Booker*, this Court has reviewed sentences for reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). We first determine whether the district court correctly calculated the guidelines range, including any

departure,[5] reviewing the court's legal conclusions de novo and its factual findings for clear error. *Id.* at 1054. We then determine whether the ultimate sentence imposed is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).[6] *Id.* at 1055. "Regardless of whether the sentence imposed is inside or outside the Guidelines range, [we] review the sentence under an abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

Doe contends the district court erred in departing upward based upon his criminal history.[7] We evaluate departures by examining: "(1) whether the factual

---

[5] A departure occurs "when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). A variance occurs "[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors." *Id.*

[6] These factors include "the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities." *United States v. Collins,* 122 F.3d 1297, 1308-09 (10th Cir. 1997) (quotation omitted).

[7] Doe also contends the district court erred by weighing his criminal arrest history against the value of his assistance to the government. In our prior decision, we held the court erred in refusing to consider Doe's assistance to the government in deciding to depart upward and setting the degree of departure. *Doe*, 398 F.3d at 1257 n.5, 1259-60. We reasoned 18 U.S.C. § 3661 required consideration of a defendant's cooperation even if such cooperation did not rise to the level of substantial assistance under USSG §5K1.1. *Id.* at 1259. The district court determined our citation to § 3661 required it to weigh Doe's assistance against his previous arrests, which was permitted under § 3577, the predecessor to § 3661. *See Smith v. United States*, 551 F.2d 1193, 1195-96 (10th Cir. 1977). Although the court expressed uncertainty as to how to incorporate § 3661, it concluded it saw "no reason to give much, if any, consideration to defendant's assistance as a mitigating factor to [his] history of arrests." (R. Vol. II, Doc. 50

-11-

circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable." *United States v. Walker*, 284 F.3d 1169, 1171 (10th Cir. 2002) (quotation omitted).

The guidelines specifically allow for an upward departure where the "criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." USSG §4A1.3. Doe had thirty criminal history points, which substantially exceeded the thirteen points necessary for a criminal history category of VI. This clearly supports an upward departure of some degree. *See United States v. Hurlich*, 348 F.3d 1219 (10th Cir. 2003). The seriousness of Doe's offenses (eighteen convictions, four of which were for burglary) also supports an upward departure. As the district court noted, the "defendant's criminal history, high likelihood of recidivism, coupled with his increasing involvement with firearms, remove defendant from the heartland and warrant an

---

at 15-16.) While it was certainly not our intent to require weighing prior arrests against the value of Doe's assistance, Doe is incorrect that this approach "avoided the instructions given" to the district court. (Appellant's Opening Br. at 12.) The district court weighed the value of Doe's assistance against the § 3553(a) factors, which was the primary purpose of our prior order. Section 3661 simply supported our conclusion that the district court should have considered Doe's assistance to the government in its sentencing decision.

upward departure . . . ." (R. Vol. I, Doc. 24 at 3.) The district court laid an adequate basis for its factual findings, which went uncontested in the district court and on appeal.

We reject Doe's argument that the degree of departure was unreasonable. An upward departure is reasonable if the district court "precisely lay[s] out its reasoning and analysis as to why it is selecting a particular degree of departure" sufficient to "give us reasonable indicia that the sentence the district court pronounces is proportional to the crime committed." *United States v. Proffit*, 304 F.3d 1001, 1012 (10th Cir. 2002) (quotation omitted). Ordinarily, "[t]he district court accomplishes this task by using any reasonable methodology hitched to the Sentencing Guidelines . . . ." *Id*. (quotation omitted). "The task of the sentencing court is to attempt to predict what the Sentencing Commission would have established as a guideline range had it adequately considered the circumstances justifying the departure." *Hurlich*, 348 F.3d at 1222 (quotations omitted).

Here, the district court treated Doe as a career offender. The court noted if Doe had been convicted of Counts 3 and 9 of the first superseding indictment, his offense level would have been thirty-one after a three point reduction for acceptance of responsibility. Coupled with his criminal history category of VI, such convictions would have resulted in a guidelines range of 188 to 235 months imprisonment. The district court's methodology was not novel. We have permitted analogies to career offender status when calculating the appropriate

degree of an upward departure. *See United States v. Mateo*, 471 F.3d 1162, 1168 (10th Cir. 2006); *United States v. Gardner*, 905 F.2d 1432, 1438-39 (10th Cir. 1990). Moreover, Paragraph 3 of Doe's plea agreement permitted the district court to consider conduct charged in dismissed counts as "relevant conduct for purposes of calculating the offense level for Counts 1 and 2, in accordance with [USSG] § 1B1.3." (R. Vol. I, Doc. 18 at 2.)

Doe argues the district court's departure amounts to an increase of twelve offense levels and is unreasonable because we have been reluctant to approve increases over eight levels. While an upward departure equivalent to an increase of twelve offense levels is unusual, such a departure may be warranted in a "truly extraordinary case[ ]." *United States v. Goldberg*, 295 F.3d 1133, 1142 (10th Cir. 2002). This is such a case. The court described Doe as someone "who should be in prison and for whom prisons are made." (R. Vol. II, Doc. 50 at 19.) Given Doe's history of serial burglary, narcotics use, and firearm possession, we are sympathetic to the court's concern that Doe is "a man who one day may end up in somebody's house in a burglary, either high on drugs or needing drugs, armed with a firearm, and someone is killed." (R. Vol. IV at 16.)

Finally, we must evaluate whether the total sentence imposed is substantively reasonable in light of the § 3553(a) factors. *See Gall*, 128 S. Ct. At 597; *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1114 (10th Cir. 2006) ("[A]fter *Booker*, every sentence that a district court ultimately imposes must

-14-

reflect its determination of what is reasonable in light of the same § 3553(a) factors, whether that sentence is within or outside the Guidelines range.").  Given that the traditional departure analysis takes into account some measure of reasonableness, the reasonableness inquiry under § 3553(a) will necessarily overlap the departure analysis.

In this case, the district court conscientiously, comprehensively and competently supported its sentencing decision, explaining how its sentence was consistent with the § 3553(a) factors.  Significantly, the court imposed a sentence at the bottom end of the calculated range, even though it stated it was "sorely tempted to raise the sentence."  (R. Vol. II, Doc. 50 at 19.)  Given the district court's findings, as well as its exhaustive analysis, we conclude the court did not abuse its discretion in sentencing Doe.[8]

**AFFIRMED.**

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge

---

[8]  We also reject Doe's argument that the district court willfully disregarded this Court's prior order by undervaluing Doe's assistance to the government.  In our previous decision, we specifically avoided ordering the district court to attach a particular weight to Doe's assistance.  *Doe*, 398 F.3d at 1261 n.9 ("The court is not . . . required to credit [Doe] for his assistance to the government.").  Rather, we simply directed the court to "fully consider" Doe's assistance.  *Id.* at 1261. The court clearly did so.