**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 4, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

   Plaintiff - Appellee,

v.

ALFONZO J. FISHER,

   Defendant - Appellant.

No. 18-3234
(D.C. No. 6:16-CR-10001-EFM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Alfonzo J. Fisher pleaded guilty to being a felon in possession of a firearm.
*See* 18 U.S.C. § 922(g)(1). The district court sentenced Fisher to 84 months in prison.
Fisher appealed. Fisher's appointed counsel, an assistant federal public defender,
filed two *Anders* briefs advising the court that he has found no nonfrivolous bases for
appeal and seeking leave to withdraw. *See Anders v. California*, 386 U.S. 738 (1967).
Fisher has filed responses. After reviewing the record and appellate filings, we grant
counsel's motion to withdraw and dismiss the appeal.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

On October 5, 2015, a front-desk worker at a recreation center in Wichita, Kansas, saw a man—later identified as Fisher—entering a truck that the worker knew belonged to Kody Scott. At the time, Scott was lifting weights at the center. The worker told Scott about the intruder. Scott went outside to the parking lot and checked his truck for belongings. Noticing that his loaded firearm was missing from the center console, Scott approached Fisher, who was walking away.

Scott demanded that Fisher return his firearm. After first denying that he had the firearm, Fisher eventually returned Scott's firearm to him and pleaded, "please just let me go." R. vol. III at 44. Instead, Scott and several bystanders "blocked [Fisher] in . . . and waited until the officers arrived." *Id.* at 47.

When police arrived, they arrested Fisher and searched his backpack, finding Scott's lunch. Fisher denied having been in Scott's truck but admitted having possessed the firearm. Fisher claimed that he had found and taken the firearm from a planter outside the recreation center.

In January 2016, a federal grand jury returned a one-count indictment charging Fisher with possession of a firearm by a convicted felon. *See* 18 U.S.C. § 922(g)(1). Fisher moved to plead nolo contendere. As grounds, Fisher claimed that he had recently screened positive for dementia, that he suffered from memory loss, and that he did not remember the underlying facts of the offense. Fisher relied on the evaluation of Dr. Blanchard, a psychologist, who had examined Fisher. Dr. Blanchard noted that during testing, Fisher struggled particularly with verbal fluency, memory,

language, and visuospatial skills. Dr. Blanchard found a "pretty reasonable likelihood" that Fisher suffered from "some kind of dementia process" or "neurocognitive deficit." R. vol. III at 82, 86. But Dr. Blanchard concluded that "there was nothing that was so poignant as to warrant a diagnosis outside of his report of substance abuse." *Id.* at 84. The government opposed Fisher's motion to plead nolo contendere, noting that Fisher's competency was not in question and finding no circumstances warranting a plea of nolo contendere. The court agreed with the government because Fisher's case did not represent an "extraordinary" or "unusual" case.

In June 2018, Fisher pleaded guilty to the indictment's sole count. Before accepting Fisher's plea, the court advised him of the maximum penalties he faced and of the rights he would waive by pleading guilty. Fisher acknowledged that he understood. In obtaining a factual basis for Fisher's plea, the court asked Fisher if "in October of 2015, here in Kansas . . . you pulled from your pocket a Smith & Wesson .40 caliber semi-automatic handgun, which means that you had in your possession this handgun, even though you were not authorized to do that." R. vol. III at 14. Fisher stated that was "correct." *Id.* The court then asked Fisher if he had been convicted of a felony before he had been found with the gun. Fisher replied that he had. Satisfied with this factual basis, the court accepted Fisher's guilty plea.

In preparation for Fisher's sentencing hearing, a probation officer prepared a presentence investigation report (PSR). In the report, the probation officer recommended a base offense level of 14 under U.S. Sentencing Guidelines Manual

3

§ 2K2.1(a)(6) (U.S. Sentencing Comm'n 2014), together with six additional offense levels from two specific offense characteristics—two levels under § 2K2.1(b)(4)(A) because the offense involved a stolen firearm, and four levels under § 2K2.1(b)(6)(B) because Fisher had possessed the firearm in connection with another felony offense (the automobile burglary in which he had obtained the firearm). The officer recommended reducing this adjusted offense level by three levels for Fisher's acceptance of responsibility. *See* U.S. Sentencing Guidelines Manual § 3E1.1(b) (U.S. Sentencing Comm'n 2013). Before sentencing, Fisher filed written objections to the two enhancements—denying having burglarized the automobile and taken the firearm from inside it.

The district court rejected these objections, finding by a preponderance that Fisher had possessed a stolen firearm in connection with the automobile burglary. After giving Fisher credit for acceptance of responsibility, the court calculated Fisher's total offense level at 17 and his criminal-history category at VI. This left Fisher with an advisory guideline range of 51 to 63 months' imprisonment. The court varied upward, sentencing Fisher to 84 months of imprisonment. Fisher timely appealed.

**DISCUSSION**

Under *Anders v. California*, 386 U.S. 738 (1967), appellate counsel may "request permission to withdraw where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous." *United States v. Calderon*,

4

428 F.3d 928, 930 (10th Cir. 2005) (citing *Anders*, 386 U.S. at 744). We have detailed the process accompanying an *Anders* brief as follows:

> Under *Anders,* counsel must submit a brief to the client and the appellate court indicating any potential appealable issues based on the record. The client may then choose to submit arguments to the court. The Court must then conduct a full examination of the record to determine whether defendant's claims are wholly frivolous. If the court concludes after such an examination that the appeal is frivolous, it may grant counsel's motion to withdraw and may dismiss the appeal.

*Id.* (citations omitted) (citing *Anders*, 386 U.S. at 744).

Here, counsel filed an *Anders* brief claiming that Fisher had no nonfrivolous issues for appeal. In his *Anders* brief, counsel details why Fisher has no basis to attack the district court's refusal to allow him to plead nolo contendere. Further, counsel explains why it would be frivolous to attack either Fisher's conviction or sentence. In a supplemental *Anders* brief, addressing the intervening decision in *United States v. Rehaif*, 139 S. Ct. 2191, 2200 (2019), counsel identifies how Fisher's factual basis satisfied *Rehaif*'s new requirement for felon-in-possession cases that the government prove a defendant knows of his prohibited status (here, Fisher's felony status) when possessing the firearm. Fisher filed responses, complaining that the district court had not told him at his change-of-plea hearing that it would apply the two specific-offense characteristics in calculating his advisory sentencing range and asking for appointment of different counsel.

After a careful review of the record and the briefs, we agree with counsel that Fisher has no nonfrivolous ground for appeal.

5

## I. Fisher's Guilty Plea

### A. The District Court Did Not Abuse Its Discretion by Denying Fisher's Request to Plead Nolo Contendere.

Before pleading guilty, Fisher filed a motion asking permission to enter a nolo contendere plea. In support, Fisher clarified that he did not deny the factual allegations but relied on his claimed cognitive deterioration, which he said kept him from laying a factual basis for a guilty plea.

The district court denied Fisher's motion to plead nolo contendere. In doing so, the court considered and carefully weighed twelve factors traditionally relied on when determining the appropriateness of a nolo plea.[1] Ultimately, the court concluded that Fisher's case did not present any extraordinary or unusual circumstances for which the nolo plea was designed. The court did not abuse its discretion when it made this ruling.

Under Federal Rule of Criminal Procedure 11(a), a defendant may plead nolo contendere with "the court's consent." We have ruled that "the acceptance of such plea is a matter solely within the discretion of the [district] court." *United States v.*

---

[1] Those factors were (1) "the position of the Government;" (2) the violations' nature; (3) the violations' duration; (4) "prior violations;" (5) the conduct's impact on the public; (6) the plea's deterrent effect; (7) "whether acceptance of the plea would be discriminatory or incongruous;" (8) the defendant's "unique circumstances;" (9) whether the defendant has "firsthand knowledge of facts that would be sufficient to constitute a factual basis for a guilty plea;" (10) "whether a trial would be lengthy or expensive; (11) whether the nolo plea would undermine the public's confidence in the criminal justice system;" and (12) if there "is a risk of accepting a plea from an innocent defendant." R. vol. I at 33 (citing *United States v. McGill*, 128 F. Supp. 3d 863, 871–74 (E.D. Pa. 2015); *United States v. AEM, Inc.*, 718 F. Supp. 2d 1334, 1336–40 (M.D. Fla. 2010)).

*Soltow*, 444 F.2d 59, 60 (10th Cir. 1971). Though Rule 11(a) permits a district court to accept a nolo contendere plea, nothing requires a court to do so. *United States v. Buonocore*, 416 F.3d 1124, 1130–31 (10th Cir. 2005) (affirming a district court's refusal to allow a nolo plea, consistent with the district court's general policy against allowing those pleas). Here, the district court acted within its discretion in declining to allow Fisher to plead nolo contendere, and we agree with his appellate counsel that any argument to the contrary would be frivolous.

### B. The District Court Did Not Commit Any Reversible Rule 11(b)(1) Errors.

Counsel next turns to Fisher's plea hearing and the demands of Federal Rule of Criminal Procedure 11(b)(1). Because Fisher did not object at his change-of-plea hearing to any Rule 11(b) deficiency, we review for plain error any challenge on appeal. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). We reverse under plain-error review only if a defendant demonstrates (1) an error (2) that was plain, (3) that affects the defendant's "substantial rights" (i.e. prejudice), and (4) that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 725, 736 (1993) (alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). We agree with Fisher's counsel that Fisher cannot show plain error because he was not prejudiced under the third prong of plain-error review.

Under Rule 11(b)(1), a district court must place a defendant under oath and inform him of a litany of rights and procedures. Relevant here, a court must inform a

7

defendant, first, of the right to "compel the attendance of witnesses" at trial and, second, of "the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)." Fed. R. Crim. P. 11(b)(1)(E), (M). After independently reviewing the record, we agree with counsel that the district court failed to comply with these two requirements. But Fisher was not prejudiced by this failure and, thus, is unable to satisfy the requirements of plain-error review.

We have stated that a district court plainly errs when it fails to comply with the requirements of Rule 11(b)(1). *United States v. Carillo*, 860 F.3d 1293, 1300–01 (10th Cir. 2017). But any such failure will not be prejudicial if the required information was provided through another source. *United States v. Ferrel*, 603 F.3d 758, 763–64 (10th Cir. 2010) ("[A] defendant who receives the information omitted by the district court from other sources generally cannot demonstrate that he would not have pleaded guilty had the court also so informed him.").

Here, the district court failed to inform Fisher that he had a right to compel witnesses. But Fisher knew about this right from his petition to enter a plea of guilty, which he reviewed and signed. The petition stated that he knew he had "the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in [his] favor." R. vol. I at 40. Thus, it would be frivolous for Fisher to pursue this claim.

8

Likewise, the district court did not inform Fisher that it must consider the § 3553(a) factors at sentencing, as required by Rule 11(b). But, as before, the plea petition provided this information to Fisher, stating that the sentencing court would exercise its "sentencing authority pursuant to 18 U.S.C. § 3553." R. vol. I at 43. Accordingly, we agree with counsel that any claim based on shortcomings in the plea-advisement process under Rule 11(b)(1) would lack merit.

In response to counsel's first *Anders* brief, Fisher argues that the district court erred by not informing him of the guideline enhancements that might apply in his case. Specifically, Fisher points to the two-level enhancement for possessing a stolen firearm and the four-level enhancement for using a firearm in connection with another felony offense. Fisher claims that if he had known that the court would apply these enhancements, he would not have pleaded guilty. Though Fisher is correct that the court did not mention these enhancements at the change-of-plea hearing, Fisher is wrong that the court needed to do so.

At Fisher's change-of-plea hearing, the district court advised him that in formulating a sentence, the court would look to and consider the applicable advisory sentencing guidelines range. In response, Fisher stated that he understood and that his attorney had explained to him the role the guidelines would play at sentencing. The court went on to caution Fisher that no one could promise Fisher what type of

sentence he would face until the day of sentencing.[2] *See United States v. Cordova*, 350 F. App'x 285, 289 (10th Cir. 2009) (unpublished) ("[T]he court's failure to inform [the defendant] of the maximum applicable guideline range prior to accepting his guilty plea was not error."). The court was not obliged to forecast Fisher's ultimate guidelines calculation and advisory sentencing range and committed no error by not doing so.

### C. Fisher Was Not Prejudiced by Any Failure to Inform Him of the Elements of the Charged Offense.

On July 29, 2019, counsel filed a supplemental *Anders* brief addressing *Rehaif* and whether this post-sentencing-hearing decision affords Fisher any ability to challenge his guilty plea. We agree with Fisher's counsel that *Rehaif* does not undermine Fisher's conviction.

At the time of Fisher's sentencing, the government needed to prove three elements to secure his conviction under 18 U.S.C. § 922(g)(1): (1) that he had been previously convicted of a felony; (2) that he thereafter knowingly possessed a firearm;[3] and (3) that the possession was in or affecting interstate commerce. In *Rehaif*, the Supreme Court required that the government must also prove that the

---

[2] Federal Rule of Criminal Procedure 11 *does* require a court to inform the defendant of "any maximum possible penalty . . . [and] any mandatory minimum penalty." Fed. R. Crim P. 11(b)(1)(H)–(I). The district court satisfied this obligation.

[3] In *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016), we held that "constructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object."

10

defendant "knew he had the relevant status" (here, that Fisher knew he was a felon) when he possessed the firearm. *Rehaif*, 139 S. Ct. at 2194.

Because Fisher did not anticipate *Rehaif* or object on its grounds, we review any claimed error under that case for plain error. Here, we agree with Fisher's counsel that the factual basis established for Fisher's guilty plea established *Rehaif*'s additional element. As counsel notes, Fisher agreed with the district court when it said to him, "I understand that you're admitting that in October of 2015, here in Kansas, . . . you pulled from your pocket a Smith & Wesson .40 caliber semi-automatic handgun, which means that you had in your possession this handgun, even though you were not authorized to do that." R. vol. III at 14.

In addition, under the prejudice prong of plain-error review, a defendant must demonstrate that "the record as a whole fails to provide a sufficient factual basis to support the guilty plea." *Carillo*, 860 F.3d at 1301. "In assessing factual sufficiency under the plain error standard, this court may look beyond those facts admitted by [the defendant] during the plea colloquy and scan the entire record for facts supporting his conviction." *Id.* at 1305 (citing *United States v. Vonn*, 535 U.S. 55, 74 (2002)). The words of Fisher's counsel at his original sentencing hearing show the particular difficulties Fisher would face in claiming ignorance of his felon status:

> From the age of 18 until now at age 66, Alfonzo Fisher has spent over 30 years of his life in prison. Examining the cases that comprise his criminal history, he has been convicted of four categories of crimes. . . . Fisher has: 11 traffic cases, 4 drug cases, 9 forgery cases and 17 property crime cases (12 thefts, 4 burglaries, and 1 robbery).

11

After serving about two years for his first felony at age 18 for robbery, Mr. Fisher had eleven cases in his twenties. The convictions from his twenties resulted in 14 more years of prison. Released in his thirties, Mr. Fisher was convicted of two more cases for another four years of incarceration. In his forties, Mr. Fisher served another five years for three more cases. Moreover, in his fifties, he served another five years on eight more cases. Now in his sixties, Mr. Fisher has served another three years on three cases.

R. vol. I at 51–52. The PSR lists multiple felony convictions, including the 1989 felony conviction mentioned at Fisher's sentencing hearing. Everything considered, we conclude that Fisher has no meritorious argument that his factual basis insufficiently established that he knew of his felon status when he possessed the charged firearm.

## II. Fisher's Sentence

As mentioned, the district court varied upward 21 months to reach a sentence of 84 months of imprisonment. In his *Anders* brief, Fisher's counsel informs us that he sees no nonfrivolous ground to challenge the district court's guideline calculation or its later above-advisory-range sentence. Having examined the district court's stated reasons for the sentence and its attention and adherence to the sentencing factors listed at 18 U.S.C. § 3553(a), we agree.

We review the reasonableness of sentences for an abuse of discretion. *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). Reasonableness includes both a procedural and substantive component. *Id.* "The procedural component concerns how the district court calculated and explained the sentence, whereas the substantive component concerns whether the length of the sentence is

12

reasonable in light of the statutory factors under 18 U.S.C. § 3553(a)." *United States v. Adams*, 751 F.3d 1175, 1181 (10th Cir. 2014) (citing *Alapizco-Valenzuela*, 546 F.3d at 1214–15).

### A. The Sentence Was Procedurally Reasonable.

In his *Anders* brief, counsel guides us to the two objections Fisher made at the sentencing hearing. Counsel concludes that pursuing either of these preserved issues on appeal would be frivolous. We agree.

When reviewing application of the guidelines, "we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Halliday*, 665 F.3d 1219, 1222–23 (10th Cir. 2011) (quoting *United States v. Mollner*, 643 F.3d 713, 714 (10th Cir. 2011)). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *United States v. McClatchey*, 316 F.3d 1122, 1128 (10th Cir. 2003) (quoting *United States v. Torres*, 53 F.3d 1129, 1144 (10th Cir. 1995)).

Here, the district court did not err, let alone commit clear error, by finding by a preponderance that Fisher's offense involved a stolen firearm. The commentary to § 2K2.1(b)(4) states that the enhancement applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen." U.S. Sentencing Guidelines Manual § 2K2.1(b)(4) cmt. n.8(B) (U.S. Sentencing Comm'n

2014). On the facts earlier given, the district court properly found that the offense involved a stolen firearm.

Nor did the district court err, let alone commit clear error, by finding by a preponderance that Fisher had "used or possessed any firearm or ammunition in connection with another felony offense." U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sentencing Comm'n 2014). The application note tells us that this subsection applies "in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary." U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) cmt. n.14(B) (U.S. Sentencing Comm'n 2014). Here, the district court properly found by a preponderance that Fisher took the firearm during the burglary of Scott's automobile. Accordingly, we identify no nonfrivolous issues Fisher could raise concerning the district court's calculation of his guideline range.

Furthermore, the district court properly relied on the 18 U.S.C. § 3553(a) sentencing factors and explained its reasoning for applying them to support a 21-month upward variance. Specifically, the district court justified the upward variance by noting the need to promote respect for the law and to protect the public from further crimes by Fisher.[4] *See* 18 U.S.C. § 3553(a)(2)(A), (C). The district court tied

_____

[4] During the sentencing hearing, the district court veered between justifying the above-guideline sentence as a variance under the § 3553(a) factors and as a departure under U.S. Sentencing Guidelines Manual § 4A1.3. Near the end of the sentencing hearing, the probation officer approached the court to seek clarification on

14

these concerns to Fisher's remarkable almost-50-year criminal history of primarily property-related crimes. In summary, the district court's procedure was reasonable—it fully supported and explained the bases for the guideline calculation and variance.

### B.     The Sentence Was Substantively Reasonable.

Fisher's counsel also claims it would be frivolous to challenge the substantive reasonableness of Fisher's 84-month sentence. We agree.

We review the substantive reasonableness of a criminal sentence for abuse of discretion and "will reverse only if the sentence imposed was 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017) (quoting *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012)).[5] In reviewing the substantive reasonableness of a sentence, we grant deference "not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *United States v. Gieswein*, 887 F.3d 1054, 1064 (10th Cir.) (quoting *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008)), *cert denied*, 139 S. Ct. 279 (2018), *and reh'g denied*, 139 S. Ct. 1247 (2019). This is because "[t]he judge sees and hears the evidence, makes credibility

the basis for the above-guideline sentence, and the district court stated that he was relying on both bases. Though the 84-month sentence might well be justified as a departure under U.S. Sentencing Guidelines Manual § 4A1.3 too, we do not reach that issue, because we affirm on the upward-variance ground (§ 3553(a) factors).

[5] Fisher's counsel states that it would be frivolous to challenge any of Fisher's conditions of supervised release. Importantly, no objection was made to these conditions in the district court. Thus, any potential review would be for plain error. After a review of these conditions, we see no error, let alone plain error, with Fisher's conditions of supervised release.

determinations, has full knowledge of the facts and gains insights not conveyed by the record." *United States v. Barnes*, 890 F.3d 910, 915–16 (10th Cir. 2018) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Under this deferential standard, it would be frivolous to claim on appeal that Fisher's sentence was substantively unreasonable. As noted, Fisher's advisory guidelines sentencing range was 51 to 63 months' imprisonment. The district court appropriately weighed the § 3553(a) factors and, based on Fisher's substantial criminal history, departed upward to sentence Fisher to 84 months' imprisonment. We permit a court to "make its own reasonable application of the § 3553(a) factors," *Kimbrough v. United States*, 552 U.S. 85, 113 (2007), and, thus, identify no error in the court's decision to increase Fisher's sentence based on his previous criminal convictions. Accordingly, we agree with defense counsel that it would be frivolous to argue that Fisher's sentence was substantively unreasonable.

### C. The District Court's Error in Calculating Fisher's Criminal-History Points Did Not Prejudice Him.

Counsel identifies an error in Fisher's criminal-history calculation. We agree with counsel that the court erred, but we also agree under the plain-error standard that the error did not prejudice Fisher.

As counsel notes in his *Anders* brief, the district court assigned Fisher a criminal-history point for his six-month sentence resulting from a March 2004 petit-theft conviction. Under the guidelines, a sentence of less than a year scores a criminal-history point only if it is "imposed within ten years of the defendant's

16

commencement of the instant offense." U.S. Sentencing Guidelines Manual § 4A1.2(e)(2) (U.S. Sentencing Comm'n 2013). Because Fisher committed the instant offense in October 2015, Fisher's petit-theft conviction should not have garnered a criminal-history point. But as counsel also points out, Fisher suffered no prejudice from this error. After all, Fisher had 34 countable criminal-history points. Subtracting one point from this total still leaves Fisher's point total well over the 13 points needed to obtain criminal history category VI, the highest criminal history category. *See United States v. Hurlich*, 348 F.3d 1219, 1221 (10th Cir. 2003) ("Category VI is the highest level of criminal history on the sentencing table . . . ."). Thus, Fisher maintains the same criminal-history category and advisory sentencing range. Accordingly, we agree with counsel that any challenge on appeal to the error would be frivolous.

## CONCLUSION

Having found no nonfrivolous grounds for challenging Fisher's conviction or sentence, we dismiss Fisher's appeal and grant appellate counsel's motion to withdraw.

Entered for the Court

Gregory A. Phillips
Circuit Judge

17